UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                        CASE NO. 6:23-cr-00234-CEM-EJK

MICHAEL GABRIEL ROBLES VAZQUEZ

**AMENDED NOTICE OF MAXIMUM PENALTIES ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS**

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, hereby files this Amended Notice of Maximum Penalties,[1] Elements of Offense, Personalization of Elements and Factual Basis, stating as follows:

ESSENTIAL ELEMENTS

The essential elements of the violation of Count One, 18 U.S.C. § 1956(h), conspiracy to commit concealment money laundering, are as follows:

First:    two or more people agreed to try to accomplish a common and unlawful plan to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

Second:    the Defendant knew about the plan's unlawful purpose and willfully joined in it

The elements of Counts Twelve, Thirteen, and Fourteen are:

First:    the Defendant knowingly conducted or tried to conduct a financial transaction;

---

[1] The notice of maximum penalties filed at Dkt. 81 contained an inadvertent miscalculation. That calculation has been corrected in this version.

<dl>
<dt>Second:</dt>
<dd>the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;</dd>

<dt>Third:</dt>
<dd>money or property did come from an unlawful activity, specifically computer fraud and wire fraud; and</dd>

<dt>Fourth:</dt>
<dd>the Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.</dd>
</dl>

## PENALTY

The offenses charged in Count One, Twelve, Thirteen, and Fourteen each carry a maximum sentence of 20 years' imprisonment, a fine of not more than $500,000, or twice the value of the monetary value or instrument involved, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

Additionally, the defendant must forfeit property, pursuant to 18 U.S.C. § 982(a)(1), as outlined in the Indictment. Among the items that will be forfeited is an estimated $4,476 in proceeds the defendant obtained as a result of his participation in this conspiracy.

## PERSONALIZATION OF ELEMENTS

As to Count One, at some point in time from on or about February 25, 2021 through on or about February 24, 2022:

<dl>
<dt>First:</dt>
<dd>Did two or more people agreed to try to accomplish a common and unlawful plan to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)?</dd>

<dt>Second:</dt>
<dd>Did you know about the plan's unlawful purpose and willfully joined in it?</dd>
</dl>

As to Count Twelve, Thirteen, and Fourteen, on or about July 8, 2021, July 16, 2021, and November 19, 2021,

<dl>
<dt>First:</dt>
<dd>Did you knowingly conduct or try to conduct a financial transaction?</dd>

<dt>Second:</dt>
<dd>Did you know that the money or property involved in the transaction were the proceeds of some kind of unlawful activity?</dd>

<dt>Third:</dt>
<dd>Did the money or property come from an unlawful activity, specifically computer fraud and wire fraud?</dd>

<dt>Fourth:</dt>
<dd>Did you know that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds?</dd>
</dl>

## FACTUAL BASIS

Starting in March 2021, the Internal Revenue Service – Criminal Investigation ("IRS") and the Federal Bureau of Investigation ("FBI") investigated a ring of conspirators involved in laundering the proceeds of computer fraud and business email compromise schemes by routing payments to fake businesses in the Middle District of Florida and transferring those funds to offshore accounts in China. This investigation revealed the following true facts about this conspiracy and MICHAEL GABRIEL ROBLES VAZQUEZ's participation in this conspiracy:

*Identification of MORALES and LABOUR*

In the course of an ongoing money laundering investigation, the IRS and FBI identified a bank account held by a business at a Wells Fargo in Deltona, Florida in March 2021. The business was a company named Morales Primitive, Inc. and the nature of the transactions in that account strongly indicated that this account was used for money laundering. In the first two weeks of March 2021, Morales Primitive, Inc. received a total $768.485.10 in incoming wire transfers from a company, T.C., and, upon receipt of those wire transfers, would wire transfer those funds to companies located in China. The recipients of those funds included company accounts referred to in these legal proceedings as Offshore Account 1 in Zhejiang, China, Offshore Account 2 in Weifang, China, and Offshore Account 3 in Weifang, China.

When the IRS and FBI interviewed representatives of T.C., they learned that none of the wires from T.C. were intentionally directed to Morales Primitive Inc. and T.C. had no legitimate business with Morales Primitive Inc. Instead, employees of T.C. reported that their business had been the victim of a business email compromise scheme and that someone had accessed T.C.'s email system to falsely request the unauthorized wires be sent to Morales Primitive Inc. at the bank account at Wells Fargo.

Further investigation into Morales Primitive, Inc. revealed that this was a fake company with no real business that was opened by Jihad MORALES for the purpose of laundering the proceeds of this computer and wire fraud scheme. The records of

spending of the funds from the Morales Primitive, Inc. bank account also revealed the participation of Cristian Rodriguez LABOUR. In February 2022, law enforcement executed a search warrant of LABOUR's cellular phone. Through the records of communications from LABOUR's cellular phone, cell phone tolls records, bank records, and other sources, investigators were able to identify the structure of this money laundering scheme and its participants. Essentially, LABOUR recruited individuals such as MORALES and VAZQUEZ and others to use their personal identifiers to create fake businesses in the Middle District of Florida. The recruited individuals, such as MORALES and VAZQUEZ, would then open bank accounts in the names of the fake businesses. The investigation revealed that victim businesses throughout the country experienced business email compromises and other forms of computer fraud, resulting in fraudulently obtained wires being directed to the fake businesses opened by LABOUR and recruited individuals in Florida, such as MORALES and VAZQUEZ. When a wire containing fraud proceeds was sent to those fake business accounts, LABOUR would relay instructions to the individuals like MORALES and VAZQUEZ to wire the money to an offshore account in China and withdraw a portion of the funds as payment. LABOUR, the recruited individuals such as MORALEZ or VAZQUEZ, and other conspirators would then split the proceeds of those withdrawals.

***Participation of VAZQUEZ and Creation of Fake Business Vasquez Go Getter, Inc.***

LABOUR recruited MICHAEL GABRIEL ROBLES VAZQUEZ ("VAZQUEZ") into this scheme at some point in the summer of 2021. On or before

June 7, 2021, VAZQUEZ gave LABOUR and his conspirators VAZQUEZ's personal identifiers and LABOUR and his conspirators incorporated the business Vasquez Go Getter, Inc. with the state of Florida. The formation documents for this business identify VAZQUEZ as the registered owner and his home address in the Middle District of Florida as the principal place of business. Vasquez Go Getter, Inc. was a fake business with no legitimate or lawful purpose.

Throughout this scheme, VAZQUEZ used a telephone number with digits ending x8907 and a WhatsApp account associated with this same telephone number. Throughout this scheme, VAZQUEZ would create bank accounts for the fake business Vasquez Go Getter, Inc. When large sums of computer fraud and wire fraud proceeds were transferred into those accounts, VAZQUEZ would quickly transfer most of those funds to offshore accounts held by businesses in China and would withdraw fraud proceeds from the accounts. VAZQUEZ would then keep a portion of the withdrawn fraud proceeds and give a portion of the withdrawn fraud proceeds to LABOUR and others within the conspiracy.

*Vasquez Go Getter Inc. Wells Fargo Account #9354*

Two days after Vasquez Go Getter, Inc. was incorporated, on June 9, 2021, VAZQUEZ opened a business checking account in the name of Vasquez Go Getter, Inc. at a Wells Fargo in Orlando ending in #9354. VAZQUEZ had sole signatory authority for this account. VAZQUEZ told the bank that he was the sole owner of the business and that it was in the retail trade industry and was involved in resale of new small electronics, with annual gross sales estimated to be $2,100. This was false.

6

There was no business and this account had no legitimate or lawful purpose.

Among other things, the bank records reveal the following activity in the Wells Fargo Account #9354 for the fake business Vasquez Go Getter, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 6/30/21 | $30,000.00 | K. Inc. | | | |
| 7/1/21 | | | | | $500 |
| *Totals* | *$30,000.00* | | | | *$500* |

Vasquez Go Getter, Inc. had no legitimate business with K. Inc. A complaint was made to Wells Fargo and the bank was able to return $28,823.87 by July 9, 2021. On July 26, 2021, Wells Fargo closed the account due to suspected fraud.

***Vasquez Go Getter Inc. TD Bank Account #5572***

One day after Vasquez Go Getter, Inc. was incorporated, on or about June 8, 2021, VAZQUEZ opened a business checking account for Vasquez Go Getter, Inc. at a TD Bank in Orlando ending in #5572. VAZQUEZ was the sole signatory on the account. VAZQUEZ told bank officials that Vasquez Go Getter, Inc. had been operating for 6-24 months, had $500,000 in sales, and was in the "Electronic Stores" line of business. This was false. This account had no legitimate or lawful purpose. Vasquez Go Getter, Inc. was a fake business with no lawful business activity and was designed to conceal and launder unlawful proceeds.

Among other things, the bank records reveal that VAZQUEZ initiated the following wire transfers and withdrawals using the TD Bank Account #5572 for the fake business Vasquez Go Getter, Inc.:

7

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 7/7/21 | $101,894.00 | M.F. Inc. | | | |
| 7/8/21 | | | | | $500.00 |
| 7/8/21 | | | $88,750.00 | 2 in Weifang, China | |
| 7/8/21 | | | | | $9,000.00 |
| 7/9/21 | | | | | $1,000.00 |
| 7/9/21 | | | | | $280.00 |
| *Totals* | *$101,894.00* | | *$88,750.00* | | *$10,780.00* |

VAZQUEZ and Vasquez Go Getter, Inc. had no legitimate business with M.F. Inc. or the business holding Offshore Account 2 in Weifang, China. In the above transactions, VAZQUEZ knew that outgoing wire transfers were intended to conceal the proceeds of unlawful activity.

***Vasquez Go Getter, Inc. JP Morgan Chase Bank #2807***

Three days after Vasquez Go Getter, Inc. was incorporated, on or about June 9, 2021, VAZQUEZ opened a bank account in the name of Vasquez Go Getter, Inc. with JP Morgan Chase in Orlando ending in the last four digits #2807. VAZQUEZ had sole signatory authority. Vasquez Go Getter, Inc. was a fake business with no lawful business and was designed to conceal and launder unlawful proceeds.

Among other things, the bank records reveal that VAZQUEZ initiated the following wire transfers and withdrawals using the JP Morgan Chase Account #2807 for the fake business Vasquez Go Getter, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 7/15/21 | $22,970.00 | A.T. | | | |
| 7/15/21 | | | | | $600.00 |
| 7/16/21 | | | | | $3,000.00 |

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 7/16/21 | | | $19,000.00 | 6 in Weifang, China | |
| 7/19/21 | | | | | $200.00 |
| **_Totals_** | **_$22,970.00_** | | **_$19,000.00_** | | **_$3,800.00_** |

VAZQUEZ and Vasquez Go Getter, Inc. had no legitimate business with A.T. or the business holding Offshore Account #6 in Weifang, China. VAZQUEZ knew that outgoing wire transfers were intended to conceal the proceeds of unlawful activity.

In addition, on or about July 28, 2021, a separate victim business, I.F. LLC, initiated a wire of $52,885.68 to Vasquez Go Getter, Inc. at the JP Morgan Chase Account #2807. I.F. LLC initiated this wire transfer after receiving wire instructions from a spoofed email that appeared to be from a firm I.F. LLC had a business relationship with. This attempted fraudulent wire transfer was stopped before the fraud proceeds were received at the JP Morgan Chase Account #2807. Vasquez Go Getter, Inc. had no legitimate business with I.F. LLC.

### *Vasquez Go Getter Inc. TD Bank Account #5572 (November)*

Vasquez's TD bank account remained open after the July transactions and, in November, there was a similar pattern of random incoming wire, immediate wire to an offshore Chinese account and a withdrawal for a portion of the total.

Among other things, the bank records reveal that VAZQUEZ initiated the following wire transfers and withdrawals using the TD Bank Account #5572 for the fake business Vasquez Go Getter, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|---|---|---|---|---|---|
| 11/18/21 | $11,614.93 | C. | | | |
| 11/18/21 | | | | | (ATM) $1,000.00 |
| 11/19/21 | | | $8,700.00 | 2 in Weifang, China | |
| 11/19/21 | | | | | $1,825.00 |
| **Totals** | **$11,614.93** | | **$8,700.00** | | **$2,825.00** |

On or about November 26, 2021, C. made an effort to reverse the wire transfer but the fund had already been offshored to China. VAZQUEZ and Vasquez Go Getter, Inc. had no legitimate business with C. or the business holding Offshore Account #2 in Weifang, China.

In December 2021 and January 2022, VAZQUEZ and LABOUR were continuing to have WhatsApp conversations regarding this scheme. In early January 2022, VAZQUEZ and LABOUR discussed a bank account with SunTrust that was inactive/shut down and their efforts to reopen it. On January 7, 2022, VAZQUEZ texted a screenshot showing his balance at the TD Bank 5572 account at the time – - $8.67 – with the message "we can work this one." LABOUR and VAZQUEZ discussed the two different accounts at TD Bank and Suntrust over the course of January 2022. On January 26, 2022, LABOUR relayed to VAZQUEZ "Let me call them right away and see what they say," referring to the conspirators who would effect the fraudulent deposits into the account. LABOUR then told VAZQUEZ: "Everything is cool, but they did not want to make a deposit for you on TD Bank, because of that call you had, and better to wait until everything is right. If you had

another account, they would make a deposit for you, but obviously, we do not have one now."

On December 12, 2023, the IRS and FBI interviewed VAZQUEZ regarding his involvement in this scheme. VAZQUEZ admitted that Vasquez Go Getter, Inc. had no legitimate business operation and he transferred money as instructed by his conspirators.

In all of the conduct outlined above, VAZQUEZ agreed with others to try to accomplish an unlawful plan to conduct, or attempt to conduct, financial transactions, knowing that the money involved in the scheme involved proceeds of some sort of unlawful activity. In addition, VAZQUEZ knew that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds, and the plan did, in fact, involve proceeds of computer fraud and wire fraud. VAZQUEZ agreed with others to accomplish this common and unlawful plan and VAZQUEZ knew the unlawful purpose of the plan when he voluntarily joined in it.

The total amount of cash withdrawals from accounts associated with VAZQUEZ outlined above is $17,905. The best readily provable estimate of the amount that VAZQUEZ received in compensation for participating in this scheme is 25% of the cash withdrawals, or $4,476. The readily provable amount of money laundered through the entire scheme outlined above was $3,323,941. The

conspirators unsuccessfully attempted to launder another $6,145,877 through the scheme outlined above.

                        Respectfully submitted,

                        ROGER HANDBERG
                        United States Attorney

By:   *s/ Dana E. Hill*
       Dana E. Hill
       Assistant United States Attorney
       USA No. 189
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone: (407) 648-7500
       Facsimile: (407) 648-7643
       E-mail: Dana.Hill@usdoj.gov

U.S. v. VAZQUEZ                    CASE NO. 6:23-cr-00234-CEM-EJK

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark Reyes, Esq.

>   *s/ Dana E. Hill*
>   Dana E. Hill
>   Assistant United States Attorney
>   USA No. 189
>   400 W. Washington Street, Suite 3100
>   Orlando, Florida 32801
>   Telephone:  (407) 648-7500
>   Facsimile:  (407) 648-7643
>   E-mail:     Dana.Hill@usdoj.gov